### Isabell Snodgrass, Administratrix, Appellee, v. Chicago-Sandoval Coal Company, Appellant.

MINES AND MINERALS, § 179*—*when recovery for death of employe not sustained by the evidence.* In an action for death of a shot firer while employed in defendant's mine, alleged to have resulted from his being overcome by bad air, evidence *held* insufficient to support a verdict for plaintiff on the theory that death resulted from being overcome before he could escape from the room after lighting the fuse.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Snodgrass v. Chicago-Sandoval Coal Co., 183 Ill. App. 442.

Appeal from the Circuit Court of Marion county; the Hon.
JAMES C. McBRIDE, Judge, presiding. Heard in this court at the
October term, 1912. Reversed and remanded. Opinion filed June
10, 1913.

W. F. BUNDY and NOLEMAN & SMITH, for appellant.

CHARLES HOLT and WALTER S. LOUDEN, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the
court.

This is an action on the case at common law brought
by appellee, Isabell Snodgrass, as administratrix of
the estate of Robert W. Snodgrass, her deceased hus-
band, against the Chicago-Sandoval Coal Company,
appellant, to recover damages on account of the death
of her intestate while he was working as a shot firer
in appellant's mine.

The issue presented to the jury was formed on one
common law count which charged that it was the duty
of the defendant to see that its mine, especially room
17 off of the third southwest entry, was properly venti-
lated or furnished with sufficient amount of fresh air
for the use of the men working in such room; that said
Robert W. Snodgrass, on the 10th of February, 1911,
was employed by defendant in said mine as a shot firer
and it became and was his duty to fire shots or charges
placed by other workmen in said room 17 and in other
rooms in said mine, and that in pursuance of his duty
and employment, and while in the exercise of due care
for his own safety, deceased, on said date, went into
said room 17 for the purpose of lighting said shots;
that the ventilation in said room was insufficient; that
there was insufficient circulation of air therein for his
use and to maintain life; that on entering said room,
before he had sufficient time to light and fire the shots
therein, he was overcome because of insufficient air
and ventilation in said room and was caused to fall
and become unconscious therein after lighting the said

shots; that by reason of the negligence of the defendant to properly ventilate said room at said time, plaintiff's intestate was unable to escape from said room in time to avoid the force of explosion resulting from lighting the said shots and by reason thereof the said Snodgrass was killed.

The said trial resulted in a verdict for the plaintiff for three thousand dollars and the court rendered judgment on the verdict.

It appears from the evidence that the plaintiff's intestate was killed on February 10, 1911, while working in room 17 off of the third south entry off of the main west entry in appellant's mine number 2 at Sandoval, Illinois. He was found dead by his son, Fred Snodgrass, who was also a shot firer, between five and six o'clock in the afternoon, about thirty feet from the face of the room. He was lying on his left side with his left arm torn off and under him and an injury on the left side of his head. It further appears that the deceased was about fifty-nine years old at the time of his death and had been working as shot firer for several years and had been a coal miner for a great many years before he became shot firer.

From the evidence it appears that he was familiar with all the work of mining coal, including shot firing. The evidence shows that the deceased was alone in the room at the time of the accident.

Numerous errors are assigned on this record by appellant, but the one most relied upon is the refusal of the trial court to give to the jury the peremptory instruction directing the jury to return a verdict in favor of the defendant. By this motion the sufficiency of the evidence to support the evidence and judgment is raised.

Some of the witnesses for the plaintiff testified to the bad conditions of the air in the mine and especially in that locality of the mine where room No. 17 was located; that the ventilation was poor and insufficient. There was some evidence that some of the

usual and probable effects of bad air or lack of ventilation were stupor, nausea and headache, and that bad air will cause lights to go out. It appears from the evidence that the atmospheric conditions of room No. 17, into which deceased went for the purpose of firing the shots prepared by the miners who were working in that room, was bad. The evidence shows there were two shots ready to be fired. When the body of the deceased was found both shots had been fired; that the customary and only safe method in practical mining is for the shot firer to fire one shot at a time; that in preparing the shots the miner drills a hole six or eight feet deep and one and one-half to two inches in diameter, in which he places the powder and tamps it in, leaving a fuse about eight inches long extending from the hole, which is lighted by the shot firer. On lighting the fuse the shot firer at once leaves the room and does not return until after the explosion. His personal safety requires this. It would be contrary to the usual custom to light both fuses at the same time.

Appellee contends and the declaration charges that the failure of deceased to escape safely from the room was due to the presence of vitiated air.

Appellant's counsel in attempting to account for the accident say, the reasonable inference to be drawn from the evidence is that deceased lighted a fuse and after leaving the room returned before it had exploded and so encountered the force of the delayed explosion.

Appellee answers back that the deceased went into the room to fire the shots and before he had time to fire them he was overcome with bad air and became unconscious and fell, and while in that condition received the force of the explosion and was so killed.

The real difficulty that we meet as to each of the explanations contended for is that we find no evidence to sustain either theory.

Unless the court can assume without proof that deceased was so overcome by bad air and fell and that

he was so overcome after the first shot was fired and while he was attempting to light the fuse of the second shot, the judgment cannot stand. Did he fire one shot and then retire and after its discharge re-enter the room and light the fuse? Did he light both at the same time? Did the second fuse ignite too slowly and did deceased in attempting to investigate meet with the delayed explosion? Or did the fuse operate too quickly and catch him before he could retire? We might multiply queries as to just how and when the explosion was brought about, but so far as the record discloses we find no answer. We have simply the evidence of the two exploded shots, some bad air (but no evidence that anyone had been overcome on account of it) and the mangled body of deceased lying about thirty feet from the face of the coal where the shots were located.

A careful examination of the evidence fails to show which of the many possible theories that might account for the death of deceased was the true one. It would require too great an assumption and too much speculation and theorization on the part of this court to say the plaintiff has sustained his declaration by the proof.

The record is too barren of facts showing just how the accident did happen and there are too many ways it might have happened for us to adopt appellee's theory as to the manner deceased met his death.

The case will for the reasons indicated be reversed and remanded.

*Reversed and remanded.*

MR. PRESIDING JUSTICE MCBRIDE having tried the case in the court below, took no part in this decision.